## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal Action No. 3:20cr3

QUOTEZ T. PAIR,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS INDICTMENTS FOR VIOLATIONS OF DEFENDANT'S SPEEDY TRIAL (ECF No. 39) (the "MOTION"). For the reasons set forth in the Court's January 27, 2021 MEMORANDUM OPINION (ECF No. 83), DEFENDANT'S MOTION TO DISMISS INDICTMENTS FOR VIOLATIONS OF DEFENDANT'S SPEEDY TRIAL (ECF No. 39) will be denied to the extent that is based on an alleged violation of the Speedy Trial Act. Having considered Pair's undated letter received October 5, 2020 (ECF No. 37), DEFENDANT'S OBJECTION TO TRIAL CONTINUANCE (ECF No. 44), the supporting, opposing, and reply memoranda (ECF Nos. 39, 40, 41, 44, 51, 52), the arguments of counsel, and the supplemental briefing (ECF Nos. 66, 72, 76), and for the reasons stated below, DEFENDANT'S MOTION TO DISMISS INDICTMENTS FOR VIOLATIONS OF DEFENDANT'S SPEEDY TRIAL (ECF No. 39) will be denied to the extent that it is based on an alleged violation of the Sixth Amendment right to a speedy trial.

**BACKGROUND**

Unforeseeable and unfortunate circumstances have kept defendant Quotez T. Pair awaiting trial for more than a year. Pair was indicted on January 21, 2020 on two counts of distributing fentanyl.[1] ECF No. 1. He was arrested on January 30 and made his initial appearance the next day. ECF Nos. 5 & 6. On February 5, he was arraigned and ordered detained. ECF Nos. 9 & 10.

Pair's trial was originally scheduled for April 6. Then the COVID-19 pandemic struck. Citing the pandemic and the declared state of emergency in Virginia, Chief Judge Mark Davis issued a General Order on March 13 continuing all jury trials scheduled in the Eastern District of Virginia from March 16 to April 17 and excluding those days from speedy trial calculations. General Order 2020-02 at 3, No. 2:20mc7, ECF No. 2. In four further General Orders, the Court extended these continuances and the exclusion of time from speedy trial calculations through September 13.[2] See General Order 2020-07 at 7, No. 2:20mc7, ECF No. 7 (issued March 24 and addressing the period from April 18 through May 1); General Order 2020-12 at 6-7, No. 2:20mc7, ECF No. 12 (issued April 15 and addressing the period from May 2 through June 10); General Order

---

[1] All dates are in 2020 unless otherwise noted.

[2] The Court also issued General Order 2020-06, No. 2:20mc7, ECF No. 6, on March 23 in which the Court did not further continue trials but rather expounded on General Order 2020-02's ends-of-justice findings.

2020-16 at 15 n.10, No. 2:20mc7, ECF No. 16 (issued May 26 and addressing the period from June 11 through July 6); General Order 2020-19 at 22, No. 2:20mc7, ECF No. 20 (issued June 30 and addressing the period from July 7 through September 13).

In light of General Orders 2020-02, 2020-06, and 2020-07, the Government filed a motion for continuance on March 31, positing Pair's speedy trial date to be May 27 and asking the Court to reschedule Pair's trial within that period. ECF No. 11. Counsel for the defendant informed the United States that there was no objection to it. Id. at 5. On April 6, the Court granted the Government's motion. ECF No. 12. Having considered the General Orders and the "evolving public health crisis" facing Virginia, the Court issued an order extending Pair's speedy trial date to May 27 and canceling the April 6 trial. Id.

While jury trials were continued in the District, the only pretrial motions filed in this case involved Pair's representation. On April 22, the Court received a letter motion from Pair requesting new counsel, complaining that no motions had been filed on his behalf, and asserting that his rights were being violated. ECF No. 13. That letter motion was followed the next day by his counsel's motion to withdraw. ECF No. 14. On April 29, the Court granted both motions and ordered the clerk to appoint new counsel. ECF No. 15. Less than a month later, Pair's new counsel filed a motion to withdraw, citing the risk of meeting in-person

with Pair during the pandemic. ECF No. 16. On May 26, the Court granted that motion and ordered the clerk to appoint new counsel. ECF No. 17.

On August 21, the Court received a second letter motion from Pair requesting new counsel, complaining that his counsel had failed to file motions on his behalf, asserting that the Assistant United States Attorney was threatening extra charges if he did not agree to a plea deal, and arguing that his indictment was defective. ECF No. 20. The Court received a similar letter motion on August 24. ECF No. 22. The Court heard both motions on September 3 and denied both the following day. ECF Nos. 27 & 28.

When the District resumed jury trials in September, Pair's trial, rescheduled for September 30, was to be the second held in the Richmond Division since the beginning of the pandemic. See ECF No. 19 (rescheduling the trial). However, on September 18, Pair's counsel informed the Court that, in order to avoid permanent disability, she required urgent surgery that was scheduled on the day that jury selection was to take place – September 29.[3] For that reason, counsel moved for a continuance. ECF No. 31.

---

[3] The Court's July 2 order (ECF No. 19) scheduled Pair's trial to begin on September 30. However, because of the procedures necessary to safely select a jury during the COVID-19 pandemic, the Court dedicated September 29 to jury selection.

After conferring with counsel for the parties in a series of conference calls on September 21, the Court heard the motion on September 22. At the hearing, Pair represented that he preferred to proceed with new counsel rather than to wait for his then-current counsel to recover from surgery. Tr. 2:21-22, 3:14-20, ECF No. 55. Therefore, the Court granted the motion, continuing Pair's trial "until further order of the Court after new counsel is appointed" and directing the clerk to appoint new counsel. ECF No. 34. New counsel was appointed later that day, and after conferring with counsel for the parties on September 24, the Court issued an order continuing Pair's trial until December 7 to allow new counsel time for adequate preparation. ECF No. 36.

Shortly thereafter, on October 5, the Court received a letter from Pair complaining that his right to a speedy trial was being violated. ECF No. 37. The Court ordered counsel to discuss the letter with Pair and to file any appropriate motions. ECF No. 38. Counsel filed the MOTION on October 21. ECF No. 39.

Since Pair filed the MOTION, the pandemic has once again necessitated the continuance of jury trials in the District. Citing the rise in COVID-19 cases in the District, the Court issued General Order 2020-22 on November 16, which continued all jury trials in the District and excluded the period from November 16 through January 19, 2021 from speedy trial calculations. General Order 2020-22 at 3-8, No. 2:20mc7, ECF No. 23. The Court provided

5

Pair the opportunity to object to General Order 2020-22 before hearing the MOTION.[4] ECF No. 43. Pair filed his objection on November 23. ECF No. 44.

On December 9, the Court held an evidentiary hearing on the MOTION. ECF No. 64. At the hearing, the Court clarified that Pair was alleging violations of the right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment. Because the briefing on the MOTION had not addressed the Sixth Amendment issue in any depth,[5] the Court ordered supplemental briefing. ECF No. 65. The Court also set Pair's trial for the earliest possible date for jury trials in the District - January 19. Id.

However, the rates of COVID-19 cases and hospitalizations in the District continued to rise through December and into January. See General Order 2021-01 at 3-5, No. 2:20mc7, ECF No. 26. On January 8, 2021 the Court issued General Order 2021-01, which continued all jury trials in the District and excluded the period from January 19, 2021 through February 28, 2021 from speedy trial calculations. Id. at 6, 10. After conferring with counsel for the

---

[4] In this Order, the Court also established a briefing schedule for Pair's pro se Motion to Dismiss the Indictment (ECF No. 42) on the grounds that it is defective, which the Court received on November 18.

[5] Pair's October 5 letter tersely invoked his Sixth Amendment right to a speedy trial, ECF No. 37, but his opening brief was silent on the issue. His reply brief alleged a violation of his Sixth Amendment right only in passing. ECF No. 41 at 1-2.

parties on the next business day and having considered General Orders 2021-01's findings, the Court issued an order continuing Pair's trial until March 8, 2021.[6] ECF No. 77.

The supplemental briefing on the MOTION concluded on January 11. On January 27, 2021 the Court issued a Memorandum Opinion addressing the alleged violation of Pair's right to a speedy trial under the Speedy Trial Act and specifying that a Memorandum Opinion addressing Pair's right to a speedy trial under the Sixth Amendment was forthcoming. ECF No. 83. This Memorandum Opinion addresses the Sixth Amendment issue.

## DISCUSSION

### I. Legal Framework

Under the Sixth Amendment, criminal defendants have the "right to a speedy and public trial." U.S. Const. amend. VI. Unlike under the Speedy Trial Act, courts cannot rely on a bright-line rule to determine when a defendant's right to a speedy trial has been violated. See Barker v. Wingo, 407 U.S. 514, 521 (1972) ("We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate."); United States v. Hopkins, 310 F.3d 145, 150 (4th Cir. 2002) ("[N]o definitive time period has been set for compliance with the constitutional

---

[6] March 8 was the earliest date possible due to other criminal trials scheduled in the courthouse (which, because of safety measures, can accommodate a maximum of three jury trials at a time) and defense counsel's availability.

stricture on trial delays . . . ."). Instead, courts must undertake a careful balancing of the four factors laid out in the Supreme Court's decision in Barker v. Wingo, 407 U.S. 514 (1972): "(1) whether the delay was uncommonly long; (2) what the reason was for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." United States v. Shealey, 641 F.3d 627, 634 (4th Cir. 2011) (citing Barker, 407 U.S. at 530). Defendants must show that, on balance, these four factors weigh in their favor. Id. No factor standing alone is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Barker, 407 U.S. at 533.

## II. Analysis

Pair moves to dismiss the indictment on the basis that his Sixth Amendment right to a speedy trial has been violated. Although the first factor – the length of the delay – weighs in favor of finding that Pair's right to a speedy trial has been violated, the other factors are either neutral or weigh against it. Therefore, as explained below, Pair's right to a speedy trial has not been violated.

## a. Length of delay

The length of delay plays two roles in the analysis of Sixth Amendment claims. As a threshold matter, defendants must prove that the delay is "presumptively prejudicial." Barker, 407 U.S. at

530; see also United States v. Burgess, 684 F.3d 445, 451 (4th Cir. 2012) ("The duration of the delay, in addition to being a factor in this test, also is a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial."). If the delay is not presumptively prejudicial, a court need not consider the other Barker factors. Barker, 407 U.S. at 530. If the delay is presumptively prejudicial, a court must weigh "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim" alongside the other Barker factors. United States v. Hall, 551 F.3d 257, 271 (4th Cir. 2009) (quoting Doggett v. United States, 505 U.S. 647, 652 (1992)).

The Supreme Court has suggested that a delay approaching one year is presumptively prejudicial. Burgess, 684 F.3d at 452 (citing Doggett, 505 U.S. at 652 n.1). In addition, the Fourth Circuit held in United States v. Woolfolk, 399 F.3d 590 (4th Cir. 2005), that as a "general rule," an eight-month delay is presumptively prejudicial. Id. at 598.

The delay in this case is presumptively prejudicial. Pair has been waiting more than a year for his trial: he was indicted on January 21, 2020, arrested on January 30, 2020, and his trial is currently scheduled for March 8, 2021. As in Woolfolk, this case involves a single defendant and a small number of counts under 21 U.S.C. § 841(a)(1) (two in this case and one in Woolfolk). See

9

Woolfolk, 399 F.3d at 592, 598 ("[G]iven the fact that Woolfolk's case involves little complexity, we see no reason to deviate from th[e] general rule [that an eight-month delay is presumptively prejudicial] here."). Nor has the Government argued that Pair's case is particularly complex. The trial is expected to last three days (one of which is devoted to jury selection because of the safety precautions necessary to seat a jury during a pandemic). Thus, a delay of more than a year is presumptively prejudicial.

The Government argues that Pair has not established that this delay is presumptively prejudicial because it does not violate the Speedy Trial Act and is not uncommonly long "given the current pandemic." ECF No. 72 at 32. Although it may be an "unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated," United States v. Bieganowski, 313 F.3d 264, 284 (5th Cir. 2002), courts have not relied on the absence of a violation of the Speedy Trial Act or the reason for the delay to find that a delay is not presumptively prejudicial. And this is not the time to start. As courts across the country grapple with how to balance defendants' constitutional rights during the unprecedented and ongoing pandemic, it is more important than ever to give full and deliberate consideration to Pair's constitutional right to a speedy trial separate from his right under the Speedy Trial Act.

The question then is whether the length of delay in this case supports a finding that Pair's constitutional right to a speedy trial has been violated. Pair argues that the length of delay is "unusually long for a simple allegation, even taking into account the issues posed by the pandemic." ECF No. 66 at 14. However, courts have found that defendants' speedy trial rights were not violated in cases involving substantially longer delays than thirteen to fourteen months.[7] See, e.g., Ricon v. Garrison, 517 F.2d 628, 632 & n.8 (4th Cir. 1975) (finding that a thirty-six-month delay was "unquestionably substantial" but not as long as other delays where courts found no violation of defendants' speedy trial right and citing Barker, which involved a five-year delay, and cases in other circuits involving delays ranging from twenty-two months to six years); Woolfolk, 399 F.3d at 598 (citing United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998), which involved a thirty-five-month delay, and United States v. Thomas, 55 F.3d 144, 149-50 (4th Cir. 1995), which involved a thirty-month delay, as examples of cases where the Fourth Circuit found no violation of defendants' speedy trial right).

---

[7] Of course, the conclusions in those cases are based on balancing all four Barker factors. However, once finding that a delay is presumptively prejudicial, courts rarely devote much energy to evaluating the length of the delay.

On the other hand, the Supreme Court has noted that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S. at 531. As noted above, the Government does not contend that this prosecution is particularly complex, which suggests that even a relatively short delay may cause this factor to weigh in favor of finding that Pair's constitutional speedy trial right has been violated. In the Fourth Circuit's unpublished decision in United States v. Satterfield, 254 F. App'x 947 (4th Cir. 2007) (per curiam), the Court of Appeals found that a seventeen-month delay in a case involving a single defendant and two counts of distribution of a controlled substance under 21 U.S.C. § 841(a)(1) was "certainly lengthy, perhaps uncommon, but . . . not an extraordinary delay." Id. at 950. Satterfield suggests a similar conclusion is appropriate here. While the delay in this case may not be extraordinary, it is uncommonly lengthy. Therefore, the length of the delay weighs, albeit not heavily, in favor of finding that Pair's right to a speedy trial has been violated.

**b. Reasons for delay**

Courts must assign "different weights . . . to different reasons" for delay. Barker, 407 U.S. at 531. Delays "should be characterized as either valid, improper, neutral." Hall, 551 F.3d at 272. An improper reason for delay – such as to hamper the defense, gain an advantage, or harass the defendant – weighs

12

"heavily against the government." Barker, 407 U.S. at 531; see Grimmond, 137 F.3d at 828 (noting that harassment is an improper reason for delay). A more neutral reason – such as negligence, overcrowded courts, or an understaffed prosecutor's office – also weighs, albeit less heavily, against the government. See Barker, 407 U.S. at 531 ("[T]he ultimate responsibility for such circumstances must rest with the government rather than with the defendant."); Grimmond, 137 F.3d at 828 (noting that an understaffed prosecutor's office is a neutral reason for delay). Finally, a valid reason, such as a missing witness, weighs in favor of the government. Grimmond, 137 F.3d at 828; see Barker, 407 U.S. at 531.

The reasons for the delay in this case are not in dispute: the COVID-19 pandemic and defense counsel's September 2020 motion to continue account for twelve months of the thirteen to fourteen month delay.[8] Pair's trial was originally scheduled for April 6, 2020. However, between March 16, 2020 and September 13, 2020, the Court suspended jury trials in the Eastern District of Virginia because of the COVID-19 pandemic. On September 18, just after jury

---

[8] The Government argues that Pair's "own pretrial conduct contributed to the delay." ECF No. 72 at 34. Although it is true that Pair has filed numerous pro se motions and had four attorneys, see id., any delay attributable solely to this conduct (if there is any at all) was de minimis compared to the delay stemming from the confluence of the COVID-19 pandemic and defense counsel's September 2020 motion to continue.

trials had resumed in the District and less than two weeks before
Pair's trial was set to begin, defense counsel filed a motion to
continue. She notified the Court that, in order to avoid permanent
disability, she required urgent surgery that had been scheduled on
the day jury selection was to take place. Based on Pair's
preference not to wait for his counsel to recover from surgery,
the Court appointed new counsel and rescheduled the trial for
December 7, the soonest possible date that allowed new counsel
adequate time to prepare. However, three weeks before Pair's trial
was set to begin, the Court once again suspended jury trials in
the Eastern District of Virginia because of the COVID-19 pandemic.
Jury trials remain suspended in the District through February 28,
2021; Pair's trial is currently scheduled for March 8, 2021.

Both the COVID-19 pandemic and defense counsel's September
2020 motion are valid reasons for delay that weigh in favor of a
finding that the Sixth Amendment right here at issue has not been
violated. Pair does not allege that the purpose of either delay
was to hamper his defense, harass him, or gain an advantage for
the prosecution. Neither does Pair dispute the Government's
contention that defense counsel's September 2020 motion to
continue was unavoidable and necessitated both new counsel and a
delay to allow new counsel to adequately prepare for trial. See
ECF No. 72 at 34. However, Pair argues that the delay caused by
the COVID-19 pandemic should be weighed either heavily against the

14

Government, since the Government's inaction in January, February, and March 2020 "allowed the virus to surge unmitigated," or slightly against the Government, since it is a "neutral" reason for delay comparable to a crowded docket. ECF No. 66 at 14-16.

Pair's argument that pandemic-related delay should weigh heavily against the Government because it failed to adequately control pandemic in its early stages is unavailing. Like the defendant in United States v. Taylor, No. 18-198, 2020 U.S. Dist. LEXIS 232741 (D.D.C. Dec. 10, 2020), Pair "never even attempts to establish that had the Government acted with his desired urgency, jury trials in this district would not have been suspended. Nor does he cite a single case embracing his position or otherwise attributing pandemic-related delays to the Government writ large." Id. at *28; see also United States v. Briggs, 417 F. Supp. 3d 634, 639 (E.D. Pa. 2020) (rejecting the argument that "the reason for the delay is the Government's failure to adequately handle the COVID-19 pandemic").

Similarly, Pair's argument that pandemic-related delay should be weighed slightly against the Government is unavailing. In Barker, the Supreme Court reasoned that a "more neutral reason [for delay] such as negligence or overcrowded courts" should weigh against the Government "since the ultimate responsibility for such

circumstances must rest with the government."[9] 407 U.S. at 531 (emphasis added). In the case of the COVID-19 pandemic, the Government does not bear the ultimate responsibility for the pandemic; the pandemic is outside of the control of either the parties or the courts.

Moreover, delay caused by the pandemic is justified. See Barker, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay."). As explained in the Court's General Orders, the COVID-19 pandemic is a public health emergency. See, e.g., General Order 2020-06 at 2 ("In light of the ongoing public health emergency created by the nationwide spread of COVID-19, on March 13, 2020, this Court issued a General Order suspending all . . . criminal trials . . . ."). The Court has therefore suspended jury trials when it has determined that it is unable to hold them safely given the prevalence of COVID-19 in the District.[10]

---

[9] By referencing "overcrowded courts," the Supreme Court seems to suggest that delays attributable to either the prosecution or the courts are attributable to the "Government."

[10] The Court has undertaken significant measures to allow jury trial to proceed safely when conditions allow. See General Order 2020-19 at 7-13, 17-20 (describing the changes to the Court's physical facilities, the jury selection process, and the trial process to mitigate risk to all trial participants); General Order 2020-16 at 8 (describing some of the "gating criteria," including downward trends in new COVID-19 cases and percent positivity and rescission of local movement orders, that the Court relies on when determining whether it is safe to resume jury trials and other activities). The District thus held jury trials between September

And the Court has been justified in doing so. The Supreme Court has held that "[s]temming the spread of COVID-19 is unquestionably a compelling [government] interest . . . ." Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020); cf. id. at 73 (Kavanaugh, J., concurring) ("To be clear, the COVID-19 pandemic remains extraordinarily serious and deadly."). In addition, district courts across the country have concluded that delays related to the COVID-19 pandemic are justified and not attributable to any party or the courts. See, e.g., United States v. Snyder, No. 2:16cr160, 2021 U.S. Dist. LEXIS 20112, at *21 (N.D. Ind. Feb. 3, 2021) ("Nearly all of the delay . . . has been the result of the global pandemic and the resulting inability to conduct a trial in a manner that is safe for jurors, litigants, and court staff. That delay cannot rationally be attributed to the prosecution and cannot be viewed as anything other than completely justifiable."); United States v. Doran, No. 2:14cr684, 2021 U.S. Dist. LEXIS 20854, at *20-*21 (C.D. Cal. Jan. 29, 2021) (finding that this factor weighed heavily in favor of the government when "the reason for the present delay in this case is the ongoing COVID-19 public health emergency facing the Central District and

---

14 and November 15. Unfortunately for Pair, holding his trial during this period was not feasible because his new counsel, who was appointed on September 22, needed adequate time to prepare for trial.

the country as a whole"); United States v. Zhukov, No. 18cr633, 2020 U.S. Dist. LEXIS 198888, at *7 (E.D.N.Y. Oct. 26, 2020) (holding that delay is valid "when it emanates from factors beyond the government's control" and finding that the COVID-19 pandemic "is surely beyond the prosecution's control"); United States v. Crittenden, No. 4:20cr7, 2020 U.S. Dist. LEXIS 159331, at *8 (M.D. Ga. Sept. 1, 2020) ("Certainly, a global pandemic that is beyond the control of all the parties involved justifies an appropriate delay. Thus, the 'reason for delay' factor weighs in favor of the delay.").

In this case, practically all of the delay is attributable to the COVID-19 pandemic and defense counsel's September 2020 motion on the basis of a medical emergency. Both are valid reasons for delay; thus, this factor weighs against finding that Pair's right to a speedy trial was violated.

## c. **The defendant's assertion of the right to a speedy trial**

A defendant's assertion of his or her right to a speedy trial is "closely related to" the other Barker factors. Barker, 407 U.S. at 531. A defendant's timely and vigorous assertion of the right can evince an intolerable delay, improper reasons for delay, or personal prejudice to the defendant (which can be hard to measure by other means). Id.; Hall, 551 F.3d at 271 (directing courts to consider "the timeliness and vigor of the assertion"). For this reason, this factor "is entitled to strong evidentiary weight in

determining whether the defendant is being deprived of the right."
Barker, 407 U.S. at 531-32. The Supreme Court has emphasized that
"failure to assert the right will make it difficult for a defendant
to prove that he was denied a speedy trial." Id. at 532.

The Supreme Court and the Fourth Circuit have held defendants
represented by counsel to a high standard for asserting their right
to a speedy trial, finding that this factor weighs against the
defendant when counsel fails to specifically assert the
defendant's right to a speedy trial. For example, in Barker, the
Supreme Court concluded that this factor precluded the Court from
finding that the defendant's right to a speedy trial was violated
because defense counsel was appointed immediately after the
defendant's indictment, was apparently competent, and had notice
of the government's motions for continuances but failed to take
any action "that could be construed as the assertion of the speedy
trial right" for more than three years. Id. at 534, 536. Similarly,
in Thomas, the Fourth Circuit held that, although defense counsel
"may have expressed his preference to have the trial 'sooner rather
than later,'" the fact that he did not specifically assert the
defendant's right to a speedy trial supported a finding that the
defendant failed to assert his right to a speedy trial. 55 F.3d at
150; see also United States v. Ballard, 727 F. App'x 757, 760 (4th
Cir. 2018) ("Merely expressing a preference to have a case heard

sooner rather than later does not amount to the assertion of a speedy trial right.").

Pair argues that he "made known his desire to go to trial, through his attorneys and letters to the court." ECF No. 66 at 17. Specifically, he argues that he asserted his right to a speedy trial during a telephone conference on September 21, 2020. Id. During that telephone conference, held for the purpose of discussing a possible continuance due to defense counsel's medical emergency, defense counsel told the Court, "[Pair] still does not waive speedy trial. He does not want this continued." Tr. 4:12-13, ECF No. 54. Defense counsel also stated that Pair did not want to move the trial date from September 30 and that he was "mostly interested in having the trial as soon as possible." Id. at 13:18-22. Under the circumstances (namely, that defense counsel's own motion to continue was at issue), this was a sufficient assertion of Pair's right to a speedy trial.[11]

---

[11] In addition, Pair wrote the Court a letter dated October 2 in which he asserted that he "never waived [his] Constitutional rights to a speedy trial" and that the continuance necessitated by defense counsel's medical condition implicated his Sixth Amendment right to a speedy trial. ECF No. 37 at 1-2; see United States v. Green, No. 4:20cr1, 2020 U.S. Dist. LEXIS 209814, at *30-*31 (E.D. Va. 2020) (considering the defendant's personal assertions of his right to a speedy trial even though they "initially, may have conflicted with defense counsel's wishes"). The Court subsequently ordered briefing on any meritorious issues raised in this letter, which resulted in Pair filing the MOTION. Because Pair asserted his Sixth Amendment right to a speedy trial in a single sentence in his reply brief without further argument, the Court ordered

Although Pair has proved that he vigorously asserted his right to a speedy trial, he has not proved that this assertion was timely. By mid-September 2020, Chief Judge Davis had entered five General Orders continuing all criminal jury trials in the Eastern District of Virginia, the Court had entered an order extending Pair's speedy trial deadline, and Pair's trial had been rescheduled from its original April 6 date to September 30. This occurred over a six-month period without Pair or his counsel ever objecting or explicitly raising his constitutional right to a speedy trial.

In March 2020, Chief Judge Davis entered the first two orders continuing all criminal jury trials in the District. In light of those orders, the Government moved for a continuance, positing a new speedy trial date and asking the Court to reschedule the trial. In its motion, the Government noted that "defense counsel has no objection to this motion." ECF No. 11 at 5. Chief Judge Davis subsequently entered three more orders continuing jury trials, with the last entered on June 30. The parties had a conference call with the Court the following day to set a trial date. As the Speedy Trial Act's requirements and trial dates in September were discussed, defense counsel did not object on the basis of Pair's

---

further briefing on the issue at the evidentiary hearing on December 9.

statutory or constitutional right to a speedy trial.[12] In August, Pair sent the Court two letters asking for new counsel, stating that his counsel had failed to file motions on his behalf. ECF Nos. 20 & 22. The Court held a hearing on these letter motions on September 3, and Pair was afforded multiple opportunities to explain any objections to his representation. However, when doing so Pair did not raise the speedy trial issue.

Because, in September 2020 (and since as the pandemic has necessitated the entry of new General Orders continuing jury trials in the District), Pair ultimately did assert the constitutional right to a speedy trial, this factor does not weigh against finding that the Sixth Amendment has been violated. But it also does not weigh in favor of finding that is has. For six months – almost half of the thirteen to fourteen month delay in this case – Pair failed to assert his right to a speedy trial. This does not allow the Court to make a strong inference that the delay was intolerable, that the reasons for the delay were improper, or that

---

[12] The Government says that as early as June 22 and June 25, Pair's counsel "informed the Court that the defendant wanted a trial as soon as possible." ECF No. 72 at 32. A review of the transcripts of the conference calls held on these days does not bear this out. In fact, when the Court asked defense counsel on June 22 if she objected to General Order 2020-16's exclusion of days from the speedy trial calculation until July 6, she responded that she did not and that "[i]n fact, I need the time because I didn't get appointed until late, and I haven't been able to speak with [Pair] like I normally would because of the COVID problem." Tr. 15:3-12, ECF No. 69.

Pair experienced some personal prejudice that cannot be proven otherwise. Thus, this factor is best considered as neutral.[13]

### d. Prejudice to the defendant

Prejudice must be considered "in the light of the interests of defendants which the speedy trial right was designed to protect," namely: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. The Supreme Court has counseled that the last interest is the "most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id.; see United States v. Lozano, 962 F.3d 773, 781 (4th Cir. 2020) ("Prejudice, 'while not . . . essential to the establishment of a violation of the right, is a prime issue and a critical factor.'" (quoting Ricon v. Garrison, 517 F.2d 628, 634 (4th Cir. 1975))).

Perhaps as a result, decisional law sparingly addresses on the prejudice that results from the defendant's pretrial

---

[13] In Barker, the Supreme Court noted that a defendant's right to a speedy trial may be violated even if the defendant fails to object if continuances are granted ex parte. 407 U.S. at 536. To the extent the General Orders can be likened to ex parte continuances, Barker does not demand weighing this factor differently. In assessing this factor as neutral, the Court is following Barker's instruction not to weigh a defendant's failure to object so heavily as to preclude the claim that the defendant's right to a speedy trial has been violated.

incarceration or anxiety and concern. See, e.g., Hopkins, 310 F.3d at 150 (considering only the availability of evidence and witnesses and whether the defendant's "case was harmed in any manner by the delay" in evaluating prejudice to the defendant); United States v. Green, 2020 U.S. Dist. LEXIS 209814, at *34-*35 (quoting Hopkins to conclude that the defendant was not prejudiced by the delay). Yet, in Barker the Supreme Court emphasized pretrial incarceration's "detrimental impact" on defendants:

> It often means loss of a job; it disrupts family life; and it enforces idleness. . . . The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.

407 U.S. at 532-33. "Imposing those consequences of anyone who has not yet been convicted," the Court concluded, "is serious." Id. at 533. When the Fourth Circuit has addressed oppressive pretrial incarceration and anxiety and concern, it has suggested that, at least with respect to anxiety and concern, a defendant must prove something beyond the generalized anxiety and concern that any criminal defendant feels. See Hall, 551 F.3d at 272-73 (stating that "analysis of possible prejudice must focus on" on impairment to the defense because the defendants could not identify any oppressive incarceration or anxiety and concern "greater than that faced by 'anyone openly subject to criminal investigation'" that they suffered while incarcerated (quoting MacDonald, 456 U.S. 1,

9 (1982))); United States v. Crawley, 644 F. App'x 259 (4th Cir. 2016) (rejecting the defendant's argument that he was prejudiced because he "cites to no authority to support the proposition that this type of generalized anxiety establishes prejudice to the defendant"); United States v. Eccleston, 615 F. App'x 767, 776 (4th Cir. 2015) (finding that this factor weighed against the defendant when he "asserted generalized concerns that would affect any individual who is detained").

In this case, Pair has faced oppressive pretrial incarceration and heightened anxiety and concern due to the COVID-19 pandemic. Pair has been held at Pamunkey Regional Jail, ECF No. 66 at 17, which reported an outbreak of COVID-19 in September that resulted in a lockdown, see Bill Hutchinson, COVID-19 Outbreak at Virginia Jail Infects 124 Inmates, 20 Staffers, abcNEWS (Sept. 10, 2020, 6:15 PM), https://abcnews.go.com/US/covid-19-outbreak-virginia-jail-infects-124-inmates/story?id=72925115, and imposed another outbreak-related lockdown in February 2021. Although Pair does not claim to have contracted COVID-19, he argues that such outbreaks have resulted in "especially oppressive pretrial incarceration" and anxiety. ECF No. 76 at 7. Indeed, "the existence of COVID-19 is particularly worrisome in jails and prisons," as he argues. ECF No. 39 at 5. In news coverage of the September outbreak at Pamunkey, a local health official remarked that outbreaks are "almost inevitable" in a "congregated setting" like a jail.

Hutchinson, supra. Similarly, a study found that "the COVID-19 case rate for U.S. prisoners was 5.5 times higher than the U.S. population case rate." Id. As part of Pamunkey's efforts to prevent the spread of COVID-19, the jail did not allow non-essential in-person visitation between at least February 2020 and September 2020, id., which supports Pair's argument that his familial relationships have suffered because of his incarceration, ECF No. 66 at 17. In addition, the Court is aware that COVID-19 has made it harder for Pair to communicate with his attorneys than it otherwise would be. See Tr. 15:3-12, ECF No. 69 (showing that defense counsel informed the Court on June 22 that "I haven't been able to speak with [Pair] like I normally would because of the COVID problem"). Thus, it is reasonable to conclude that Pair has experienced oppressive incarceration and anxiety and concern that exceeds that experienced under ordinary circumstances.

However, Pair has not proven any impairment of his defense. Indeed, he has not "shown, or even argued, that any evidence was damaged or lost, that any witnesses could not be found, or that his case was harmed in any manner by the delay." Hopkins, 310 F.3d at 150. Without such a showing, the prejudice factor of the Barker analysis weighs against finding that Pair's right to a speedy trial was violated.

"[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim." Doggett, 505 U.S. at 655;

see also Thomas, 55 F.3d at 149 ("A Barker analysis . . . should be made even where, as here, [the defendant] cannot establish any instance of actual prejudice resulting from the delay."). However, in Doggett v. United States, 505 U.S. 647 (1992), the Supreme Court held that generally, no matter the length of delay, if the Government pursues prosecution of the defendant with "reasonable diligence," a defendant must be able to show "specific prejudice" in order to prove that his or her speedy trial right have been violated. Id. at 656; see also Thomas, 55 F.3d at 150 (noting that reasonable diligence would "altogether preclude a Sixth Amendment speedy-trial claim absent a showing of specific prejudice to [the defendant's] defense"). Even if delay results from Government negligence, the shorter the delay, the more the defendant must show particularized prejudice. Doggett, 505 U.S. at 657; see also United States v. Lloyd, 645 F. App'x 273, 279 (4th Cir. 2016) ("[S]ignificantly shorter delays arising from government negligence, like the 15-month delay here, do not excuse a defendant from showing actual prejudice."). Only a delay for an improper purpose completely relieves the defendant from showing specific prejudice. See Doggett, 505 U.S. at 656.

As discussed above, the delays in this case are not the result of an improper Government purpose or of Government negligence. The Government pursued its prosecution with reasonable diligence, but delays occurred for valid reasons outside the control of either

party. The general rule from Doggett teaches then that Pair's claim that his right to a speedy trial was violated would be barred because he has not demonstrated specific prejudice to his defense. However, the Court is hesitant to apply that general rule in this case because, unlike the defendant in Doggett, Pair has demonstrated prejudice resulting from the first two interests that the speedy trial right is designed to protect: oppressive pretrial incarceration and anxiety and concern.[14]

Nonetheless, the Court cannot ignore the Supreme Court's admonishment that impairment of the defendant's defense is the most serious of the three interests. See Barker, 507 U.S. at 532. Thus, despite the prejudice to Pair's interests in avoiding oppressive pretrial incarceration and anxiety and delay, this factor weighs against finding that his right to a speedy trial was violated. See id. at 534 (concluding that prejudice to the defendant was "minimal" even though he spent four years "living . . . under a cloud of suspicion and anxiety" and ten months in pretrial incarceration because none of his witnesses became unavailable or had significant lapses in memory); United States v. Bryant, 417 F. App'x 220, 222 (4th Cir. 2008) (finding that this factor weighed in favor of the Government because

---

[14] The defendant in Doggett challenged the delay from his indictment to his arrest, during which time he was neither incarcerated nor aware of the charges against him. 505 U.S. at 654.

"[a]lthough [the defendant] was incarcerated pending his trial and doubtless suffered some anxiety while awaiting his first and second trial, nothing indicates that [his] ability to mount his defense suffered in any respect").

### CONCLUSION

Pair has faced an uncommonly long delay, but one that is justified by the exigencies of the COVID-19 pandemic and his counsel's medical emergency, and there has been no prejudice to his defense. Under these circumstances and on this record, Pair's Sixth Amendment right to a speedy trial has not been violated.

For the reasons stated above, DEFENDANT'S MOTION TO DISMISS INDICTMENTS FOR VIOLATIONS OF DEFENDANT'S SPEEDY TRIAL (ECF No. 39) will be denied to the extent that it is based on an alleged violation of the Sixth Amendment right to a speedy trial. For the reasons set forth in the Court's January 27, 2021 MEMORANDUM OPINION (ECF No. 83), DEFENDANT'S MOTION TO DISMISS INDICTMENTS FOR VIOLATIONS OF DEFENDANT'S SPEEDY TRIAL (ECF No. 39) will be denied to the extent that it is based on an alleged violation of the Speedy Trial Act.

It is so ORDERED.

_____  /s/  REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 26, 2021